THOMAS MOTLEY v. THE STATE.

No. 1658. Decided March 27, 1912.

**Theft of Hog—Insufficiency of the Evidence—Corpus Delicti.**

Where, upon trial of theft of a hog, there was a failure to prove the corpus delicti, the conviction could not be sustained. See evidence in opinion held insufficient to sustain the conviction.

Appeal from the District Court of Leon. Tried below before the Hon. S. W. Dean.

Appeal from a conviction of theft of hog; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of hog theft, his punishment being assessed at two years confinement in the penitentiary.

We are of opinion the evidence does not justify the conviction. A negro woman named Malissa Johnson testified that she owned a pig, that it was black in color; that it was a "small size shoat," and run around the house. That one morning she started away from home to go some distance to do a day's work and the pig followed her as far as Thomas Motley's house, and that she got Thomas Motley's wife to stop it. That she has never seen the pig since; that she missed it that evening upon her return home, and became uneasy because the pig was never known to be away from home after sun down. It

seems to have been a model pig with regular habits. When she missed the pig she instituted inquiry among the neighbors and none of them had seen it. She went to the residence of appellant and inquired of his wife about the pig. Appellant was not at home. Appellant's wife told her she had seen it that evening about three o'clock. Witness then went to Lina Motley's residence. Lina was the mother of appellant, and the house was closed when she reached there. She heard them in the room and looked through a crack; did not see anybody in there except Thomas Motley and his mother. They were salting down meat. "I stayed there and looked at them about fifteen minutes. I saw them salting down meat. I heard them whispering, and Thomas asked her what they were going to do with it, and she said she didn't know, and she told him he better be particular, that it might be Malissa. Thomas Motley's mother said that. Thomas stopped and looked over her shoulder, and didn't hear anything, and he asked her what to do with it, and she said to take it in the other room. They took it in the other room." This witness then walked around to the front and asked appellant if he had seen her pig, and he said he had not. She did not see appellant the morning when she asked his wife to stop the pig. This witness went away and secured officer Richards to come down to Lina Motley's house and investigate the matter. He did so, and took a party named Cochran with him. This witness went in the house and made an examination of the entire house and found a plate of kidney fat which he says was out of the side of a hog; that it had been out of the hog about three or four hours. He found the plate of kidney fat between two beds on a bedstead in Lina Motley's house. Lina said the children got it somewhere, and subsequently said that Thomas brought it there. He says that he went there with Ike Jones, and that he and Ike Jones searched the place over but could not find any meat. His evidence shows he gave the place a thorough examination. Zula Motley, the wife of appellant, denied in toto the evidence of Malissa Johnson with reference to stopping the pig, or even seeing the pig that day. She says she does not know whether she saw Malissa Johnson's pig that day or not; that there were quite a lot of loose hogs running around in the town of Buffalo where they lived. That she did not know the color of the pig that belonged to Malissa Johnson. Richards and Cochran also investigated and searched their house but there was no meat found there. Appellant was at home when they came. That he came home about sun-down from his work. This is practically the case except the further fact that the State introduced evidence of flight. The evidence of flight is, in substance, about this: When it was thought appellant would be arrested he went to the residence of his father-in-law near the county seat of the county, the father-in-law living about seven miles from the county seat of Leon County. Buffalo, it seems, is some distance farther away. That shortly after he went to the residence of his father-in-law his wife came. They made the residence of his father-in-law their home and

he worked about the country; that when he first went there the father-in-law agreed to subrent him some land, but matters came up in some way that his father-in-law was deprived of that part of the land, and appellant worked at any odd job he could get either for his father-in-law or around the neighborhood. Appellant says the reason he left Buffalo was he did not want to be put in the calaboose at Buffalo because previously a man had been placed in that calaboose and had committed suicide by hanging and he did not want to be put in such place. Appellant is a negro. He further testified he did not want to go to jail, and he went down to see his father-in-law, thinking his father-in-law would go on his bond and keep him out of jail. This the father-in-law did when he was shortly afterwards arrested. This is a sufficient statement of the evidence in the case. There is one other fact that ought to be stated, and it is this: It is in evidence from one of the witnesses, which is denied by the other witnesses, to the effect that some black hair was found at the premises of Lina Motley, not at appellant's house.

Under this evidence it is apparent that the corpus delicti is not proved. Nobody ever saw appellant with Malissa Johnson's hog, and no one ever saw even Lina Motley, his mother, in possession of the hog. Before a conviction can be sustained the corpus delicti must be proved, and there is no evidence in this case to prove it. The only facts that connect appellant in the remotest degree, if they can be held to be facts connecting him, was the fact that he was at his mother's house, and that his mother said that appellant brought the kidney fat to her. That was accounted for by the fact that a butcher in the town testified in that connection that he was in the habit of selling appellant the kidneys and melts of hogs and beeves.

Because of the insufficiency of the evidence to support the conviction the judgment is reversed and the cause is remanded.

*Reversed and remanded.*